# UNITED STATES DISTRICT COURT

_____ NORTHERN _____ DISTRICT OF ___ ILLINOIS, EASTERN DIVISION ___

**UNITED STATES OF AMERICA**

**FILED**

v.

**WARREN GRANT**

JAN – 9 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

**CRIMINAL COMPLAINT**

MAGISTRATE JUDGE DENLOW

**08CR  0008**

CASE NUMBER:

I, the undersigned complainant being duly sworn state the following is true and correct to the best of

my knowledge and belief. Between on or about __August 2006 and October 13, 2007__ in __Cook__ county,

and elsewhere, in the _____ Northern _____ District of _____ Illinois _____ defendant(s) did,

(Track Statutory Language of Offense)

having devised and intending to devise any scheme and artifice to defraud, and for obtaining money and
property by means of false or fraudulent pretenses, representations, and promises, for the purpose of
executing the scheme and attempting to do so, knowingly caused to be delivered on or about October 7, 2007,
by U.S. mail from Tulsa, Oklahoma, according to the direction thereon, an envelope addressed to Independent
Partner Brokerage, 211 East Ontario Street, 18th Floor, Chicago, Illinois, 60111,

in violation of Title _____ 18 _____ United States Code, Section(s) _____ 1341 and 2 _____.

I further state that I am a(n) __FBI Special Agent__ and that this complaint is based on the following facts:
                                         Official Title

Continued on the attached sheet and made a part hereof:  __x__ Yes  _____ No

Signature of Complainant

Sworn to before me and subscribed in my presence,

__January 9, 2008__    at  __Chicago, Illinois__
Date                                              City and State

__MORTON DENLOW, U.S. Magistrate Judge__    _____
Name & Title of Judicial Officer                          Signature of Judicial Officer

I, Jeremy Desor, first being duly sworn, state the following under oath:

## Introduction

1.  I am an agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately 3 years.  I am currently assigned to the Chicago Division of the FBI.  As part of my assigned duties, I investigate violations of federal criminal law, including violations of Title 18, United States Code, Sections 1341, 1343, and 1344.  Prior to working for the FBI, I was employed by Legg Mason Wood Walker and Moag and Company, LLC for four years as a Financial Analyst.

2.  The following statements are based on my personal knowledge, conversations with other law enforcement officers and witnesses, as well as records obtained from various sources.

3.  This affidavit is submitted for the limited purpose of establishing probable cause to arrest WARREN GRANT for committing violations of the mail fraud statute.  As such, this affidavit does not contain all of the information that I have gathered during the investigation.

4.  In summary, there is probable cause to believe that WARREN GRANT devised and participated in a scheme to defraud individuals who invested money with Independent Partner Brokerage ("IPB"), a company that purported to engage in high-yield foreign exchange investment activities.  The President of IPB, according to its website, www.ipb-forex.com, was "Karl Randall."  Between approximately August 2006 and October 2007, IPB collected funds totaling approximately $3,500,000 from investors.  Rather than invest the money provided by the victims in this case, the funds were used by "Randall" to make "interest"

payments to investors in a typical "Ponzi" scheme structure, and were converted for "Randall's" own use through large cash withdrawals. WARREN GRANT was recently arrested by local law enforcement authorities in Aventura, Florida, while in possession of access devices which could be used to withdraw funds obtained from IPB investors, as well as credit and/or debit cards issued in the name "Karl Randall."

### Specific Facts

5. On November 2, 2007, Magistrate Judge Arlander Keys granted the application of the FBI for a warrant to search business premises located at 211 East Ontario Street, 18th Floor, Chicago, Illinois, associated with a company identified on the internet as "Independent Partner Brokerage" (IPB). The search warrant application and associated Affidavit, attached as *Exhibit 1*, are hereby incorporated by reference as if fully set forth herein. In summary, the Affidavit set forth probable cause to believe that the individuals running IPB were operating a "Ponzi" scheme. The IPB Office Space searched by the FBI was leased to IPB by Chicago Business Center ("CBC"), a business which rents office space and provides call and mail forwarding services to clients such as IPB.

6. Additionally, on November 1, 2007, Magistrate Judge Geraldine Soat Brown granted the application of the FBI for a warrant to seize funds totaling approximately $1,080,000 maintained in a Wells Fargo bank account in the name of Independent Partner Brokerage. The seizure warrant application and associated Affidavit, attached as *Exhibit 2*, are hereby incorporated by reference as if fully set

- 2 -

forth herein.  In summary, the Affidavit set forth probable cause to believe that the funds maintained in the Wells Fargo bank account were the proceeds of violations of Title 18, United States Code, Section 1341 and 1343, and therefore subject to seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C).

7.  Also, on December 14, 2007, Magistrate Judge Susan E. Cox granted the application of the FBI for a warrant to seize funds totaling approximately $177,000 maintained by Comdata, a provider of "stored-value" debit card services, in an account opened by "Karl Randall" on behalf of IPB.  The seizure warrant application and associated Affidavit, attached as *Exhibit 3*, are hereby incorporated by reference as if fully set forth herein.  In summary, the Affidavit set forth probable cause to believe that the funds maintained in IPB's Comdata account were the proceeds of violations of Title 18, United States Code, Section 1341 and 1343, and therefore subject to seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C).

8.  As described in *Exhibit 1*, the IPB Website identified "Karl Randall" as the "President" of IPB.  Additionally, as also described in *Exhibit 1*, prior to execution of the search warrant, an office manager at CBC advised the FBI that an individual who identified himself as "Karl Randall" completed documents on behalf of IPB that authorized CBC employees to forward checks and money orders received by IPB investors by FedEx for deposit into a Wells Fargo Bank account, no. 278-215-3403, in the name of "Independent Partner Brokerage" (the "IPB Wells Fargo account").  In addition, IPB allowed individuals to wire money for investment to the

- 3 -

IPB Wells Fargo account if the investment amount exceeded $5,000.

9. One method utilized by "Randall" to convert IPB investor funds for his own use was to transfer money from the IPB Wells Fargo account to accounts held at various companies that provided "stored-value" debit card services, such as Comdata and Innovative Processing Solutions, which provided these services under the company name TransCard. After transferring money to these accounts, "Randall" was able to make money available for withdrawal through various debit cards registered for each of these accounts.

10. According to records obtained from the Aventura Police Department (Aventura PD), on or about October 13, 2007, at approximately 11:46 p.m., WARREN GRANT was stopped and questioned by the Aventura PD after GRANT was observed wandering in front of an ATM for approximately 15 minutes. The officer found GRANT to be in possession of a stun gun, brass knuckles, approximately $8,000 in cash, a large number of what appeared to be ATM cards, two laptop computers, two credit cards bearing the name "Karl Randall," and address labels for IPB with an address of 211 East Ontario Street, Chicago, Illinois, among other items. GRANT did not answer any questions as to how he came to be in possession of these items. GRANT was charged by the State of Florida with offenses characterized in Miami-Dade County records as loitering/prowling, concealed weapon, and other charges.[1] The arresting officer believed that the ATM

---

[1]According to information obtained from the State of Florida, the disposition of the charge(s) was *nolle pros* on January 7, 2008.

cards in GRANT's possession might be counterfeit, and therefore contacted the U.S. Secret Service

11. A Secret Service agent was assigned to the matter, who reviewed the ATM cards seized from GRANT. Upon reviewing the ATM cards, the Secret Service agent realized the cards were not counterfeit. The 42 cards were embossed with the initials "IPB." The Secret Service determined that the cards that GRANT possessed were debit cards issued by Comdata, and provided Comdata a spreadsheet containing all of the card numbers for the Comdata cards found in GRANT's possession. Comdata traced all of the card numbers back to the IPB account opened by "Randall."

12. As previously described in *Exhibit 2*, "Randall" provided CBC with a forwarding mail address which the FBI traced to "1-Stop Pack-n-Ship" ("1-Stop"), 785-F Rockville Pike, Rockville, Maryland, a company from which "Randall" rented a mailbox and received certain forwarded mail from CBC. The 1-Stop manager described "Randall" as a black male and faxed the FBI a copy of a Maryland driver's license presented by "Randall" when he first rented the box.[2]

13. A Secret Service agent in Miami provided the FBI with a copy of GRANT's arrest photo and identifying information. I have reviewed GRANT's

---

[2]For reasons described more fully in *Exhibit 2*, I believe that the Maryland driver's license provided by "Randall" to 1-Stop was a counterfeit identification document. Additionally, the FBI has interviewed the true Karl Randall, whose information was used by the "Randall" affiliated with IPB. Randall had no knowledge relating to IPB or the fact that his identity was being used in a fraudulent manner.

arrest photograph and the Maryland driver's license presented by "Randall" to 1-Stop, and believe that the individual depicted in GRANT's Aventura PD arrest photograph matches the individual depicted in the fake Maryland Driver's License provided by "Randall" to 1-Stop.

14.  Review of records that the FBI obtained from Wells Fargo, Comdata, and TransCard shows that most or all ATM withdrawals made from IPB accounts occurring in or after October 2006 were made in Miami, Florida, or the surrounding area, including Aventura, Florida.  The 1-Stop employee interviewed by the FBI advised that "Randall" requested on at least two occasions to have mail forwarded from his mailbox at 1-Stop to a P.O. Box in Miami, Florida.

15.  With respect to the TransCard account, "Randall" registered cards to seven individuals, including the real Randall and his wife, using the true social security numbers, dates of birth, addresses and names for real individuals.  FBI agents have spoken to four of these seven individuals, each of whom had no knowledge of IPB or the fact that their name was being used as part of this fraud scheme.

16.  A public database search for each of the individuals under whose name "Randall" registered TransCard cards showed that each of the individuals at one time resided in the Park Station Apartment complex in Gaithersburg, Maryland. On or about December 12, 2007, I spoke to the Property Manager of this complex, who confirmed that six of the seven individuals resided at one time in the complex.

17.  On January 7, 2008, I conducted a public database search using the

- 6 -

identifying information for WARREN GRANT obtained from the Aventura PD.  The search yielded an address history indicating GRANT was affiliated with an address within this same apartment complex in Gaithersburg, Maryland, from approximately October 2002 until 2007.

18.    A review of IPB's Wells Fargo bank account records showed a check card purchase on or about March 29, 2007, for $1,145.00 with the description "Total Wealth Sympo." An internet search showed that an organization known as the "Sovereign Society" hosted a "Total Wealth Symposium" in Panama City, Panama from May 2, 2007, through May 5, 2007.[3] An attorney for the Sovereign Society recently confirmed for the FBI that an individual attended this symposium under the name "Karl Randall."

19.    American Airlines recently provided the FBI with the names of all passengers who traveled from Miami, Florida, to Panama City, Panama, on May 1, 2007, and May 2, 2007, as well those who traveled from Panama City, Panama, to Miami, Florida, on May 5, 2007, and May 6, 2007.  Review of this information revealed that a passenger listed as "Grant, Warre" traveled on a flight from Miami, Florida, to Panama City, Panama, on May 1, 2007, and returned from Panama City, Panama, to Miami, Florida, on May 6, 2007.

20.    GRANT was arrested in Aventura, Florida, on October 13, 2007. Interviews with multiple IPB investors, as well as a review of complaints filed by

---

[3]Viewed on various dates, including January 9, 2007, at http://www.sovereignsociety.com/offshore1975.html

investors with the FBI and Internet Crime Complaint Center, show that IPB stopped making biweekly "interest" payments to investors beginning with the payment that was due on October 15, 2007. A review of IPB's Wells Fargo bank account records show consistent, almost-daily ATM withdrawals during October 2007 up through October 13, 2007. No ATM withdrawals were made from the IPB Wells Fargo account in October 2007 after GRANT's arrest.

21. CBC employees reached "Randall" and forwarded calls to "Randall" using the telephone number 312-972-1529. In addition, "Randall" provided this as his telephone number in an email to the CBC staff that I have reviewed. A review of records obtained from AT&T for this telephone number shows the last outgoing call made from telephone number 312-972-1529 was made on October 12, 2007.

22. I have reviewed a copy of the Aventura PD arrest report for WARREN GRANT, whose full name is listed as Warren Herbert John Grant III. The report indicates GRANT was arrested on October 13, 2007, at approximately 11:46 p.m.. The arresting location was a Citibank branch at 2750 Aventura Boulevard, Aventura, Florida. This branch appears several times as a location of ATM withdrawals made from the IPB Wells Fargo account, as well as a location of withdrawals made using the Comdata cards registered through IPB's account with Comdata.

### An execution of the scheme

23. On or about October 7, 2007, a check from Victim A payable to IPB in the amount of $7,000 was delivered by the United States Postal Service to the

offices of CBC, addressed to Independent Partner Brokerage, 211 East Ontario Street, 18th Floor, Chicago, Illinois, 60611. The return address on the envelope containing the check indicates it was mailed from Tulsa, Oklahoma.

24.   Based upon the foregoing, there is probable cause to believe that between on or about August 2006 and October 2007, WARREN GRANT devised and participated in a scheme to defraud investors in IPB, and that GRANT caused the scheme to be executed by mail on or about October 7, 2007, in the Northern District of Illinois.

Jeremy Desor
Special Agent, FBI


SUBSCRIBED and SWORN TO before
me this 9th day of January 2008.

MORTON DENLOW
United States Magistrate Judge

- 9 -

EXHIBIT    l (ONE)

AUSA Brian Hayes (312) 353-4307

(REV 7/87) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION
### RECEIVED

In the Matter of the Search of

(Name, address or brief description of person, property or premises to be searched)

NOV 0 2 2007

MAGISTRATE JUDGE ARLANDER KEYS
UNITED STATES DISTRICT COURT

**IPB Office Space, located at**
**211 East Ontario Street, 18th Floor,**
**Chicago, Illinois, as more fully**
**described in Attachment A**

**APPLICATION AND AFFIDAVIT**
**FOR SEARCH WARRANT**

**CASE NUMBER: 07 M 380**

I, ___Mark Stakem___ , being duly sworn depose and say:

I am a ___Special Agent, FBI___ and have reason to believe that __ on the person of or __X__ on the property or premises known as (name description and/or location)

        See Attachment A,

in the _____Northern_____ District of ___Illinois, Eastern Division,___ there is now concealed property, namely (describe the person of property to be seized)

        See Attachment B.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

        fruits, evidence, or instrumentalities of a violation of Title 18, United States Code, Sections 1341 and
        1343

The facts to support a finding of Probable Cause are as follows:

        See affidavit.

Continued on the attached sheet and made a part hereof:  _X_  Yes  __ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

___November 2, 2007_____
Date

at ___Chicago, Illinois_____
City and State

___Arlander Keys, U.S. Magistrate Judge___
Name & Title of Judicial Officer

_____
Signature of Judicial Officer

GOVERNMENT
EXHIBIT
1

I, Mark Stakem, first being duly sworn, state the following under oath:

1.      I am an agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately nine years. I am currently assigned to the Chicago Division of the FBI. As part of my assigned duties, I investigate violations of federal criminal law, including violations of Title 18, United States Code, Sections 1341, 1343, and 1344.

2.      This affidavit is based on my personal knowledge and information obtained from documents, witnesses and other law enforcement officials. The information contained in this affidavit is submitted for the limited purpose of establishing probable cause to search leased office space located at 211 East Ontario Street, 18th Floor, Chicago, Illinois, managed by the Chicago Business Center ("CBC"), which was most recently leased by CBC to Independent Partner Brokerage (the "IPB Office Space"). As such, this affidavit does not include all of the information that I acquired while participating in this investigation.

## OVERVIEW

3.      On or about July 13, 2007, the FBI became aware that Independent Partner Brokerage ("IPB") was soliciting investments through a website, www.ipb-forex.com (the "IPB Website"). In summary, the IPB Website stated that after a 60-day holding period, investors could expect to receive monthly interest of 3-6.75% for investments of $325-$90,000. Further, the IPB Website stated that the funds would be invested in a manner which assured the safety of its investors' deposits. The FBI recently received complaints from a number of individuals who have stated that

they invested funds with IPB, but that IPB appeared to have gone out of business and/or not paid the returns promised. I have also reviewed additional complaints against IPB on internet forums, such as http://www.topix.com/forum/business/investment-services/TVH9KT4Q9GMKRB3KU. In some instances, the aggrieved investors indicated that they received bi-weekly payments prior to losing contact with IPB.

4.    IPB's claims of dramatic return on investments with little risk to investment principal, the complaints received thus far from various individuals who have invested funds on behalf of IPB, and the manner in which IPB conducted business through a "virtual office" leased from CBC leads me to believe that the principals running IPB were conducting a Ponzi scheme. As such, I believe that the IPB Office Space may contain evidence of federal violations of Title 18, United States Code, Sections 1341 and 1343.

## SPECIFIC FACTS

5.    On or about July 13, 2007, Special Agents from the FBI became aware that IPB was soliciting investments through its website "www.ipb-forex.com." Among other things, the IPB Website represented that, after a 60-day holding period, investors could expect to receive monthly interest of 3-6.75% for investments of $325-$90,000.

6.    The IPB Website represented that IPB earned money through two lines of business: (1) "providing currency exchange services to international financial entities for fixed fees...providing the company with a stable profit and

-2-

assuring the safety of its investors' deposits," and (2) "asset management by leveraging funds and trading them on the Foreign Exchange Market (FOREX)."

7.    IPB Website represented that the company leverages funds at a "50:1 ratio and puts them in operation on the Foreign Exchange Markets, trading currency pairs and thus generating consistent revenue for its investors." IPB Website stated that interest payments were made to investors on the 1st and 15th of each month. The IPB Website represented that after the initial 60 day hold period, investors could request a full refund at anytime.

8.    The IPB Website listed the company's mailing and operating address as 211 East Ontario Street, Suite 1800, Chicago, Illinois 60611. The IPB Website identified:  Karl Randall as President; James Schwaber as Executive Vice President, Corporate Operations; Viviana Labonte as Executive Vice President, Legal Affairs; Glenna Bergman as Chief Financial Officer; Stephen Olave as Executive Manager, Office Operations; and Carmen Constantin as Executive Manager, Banking Relations. The IPB Website included photographs which purported to depict these individuals.

9.    The IPB Website also listed a "Nevada Corp. Headquarters" as located at 101 Convention Center Dr. Suite 700, Las Vegas NV 89109, and provided that information relating to IPB could be obtained by calling telephone number 800-891-9538.

10.    On October 31, 2007, I spoke with Victim A, who had telephonically contacted the Chicago office of the FBI on October 19, 2007, to file a complaint

related to IPB. Victim A spoke to multiple IPB representatives prior to investing with IPB and was told IPB invested in the foreign exchange market. Victim A was told by an IPB representative that the company had more than 2,000 investors. Victim A invested $2,000 with IPB on or about March 20, 2007. Victim A invested an additional $5,000 with IPB on or about March 22, 2007. Victim A mailed cashier's checks for both of these investments to 211 East Ontario Street, Chicago, Illinois 60611. After a 90-day waiting period, Victim A began receiving biweekly interest payments from IPB. Victim A did not receive the interest payment that was due on October 15, 2007. Victim A called the company several times since that date and was told that IPB was having computer problems.

11.    On or about October 22, 2007, Victim B telephonically contacted the Chicago office of the FBI and filed a complaint related to IPB. According to the complaint, Victim B invested $20,000 on or about June 5, 2007, for investment with IPB in the foreign exchange market. Victim B received $1,000 interest payments on 8/15/07, 9/1/07, 9/15/07 and 10/1/07 but Victim B had not receive any additional payments and had been unable to reach any IPB representatives. Victim B understood from viewing a "blog" relating to IPB that there were 2,000-3,000 IPB investors worldwide.

12.    On or about October 23, 2007, Victim C telephonically contacted the Chicago office of the FBI and filed a complaint related to IPB. Victim C invested $57,000 with IPB and had been unable to reach any company representatives.

13.    On or about October 23, 2007, Victim D telephonically contacted the

Chicago office of the FBI and filed a complaint related to IPB. According to the complaint, Victim D invested $3,500 with IPB. Victim D made this investment with a cashier's check that was received by IPB on or about August 29, 2007. Sometime thereafter, Victim D tried to view IPB's website but it was inoperable. Victim D tried calling IPB's 1-800 telephone number but it was putting callers on hold and then disconnecting. Victim D advised an internet "blog" had been started by concerned IPB investors and could be viewed at "www.topix.com/forum/business/investment-services."

14.    On or about October 25, 2007, I reviewed the postings on the above-referenced website. I found postings from individuals stating they were IPB investors who felt the company had been operating a fraud scheme and that their money was lost. Many of these individuals advised they had been receiving bi-weekly payments from IPB up until the payment that was due on October 15, 2007, and now feared the company was running a "Ponzi" scheme.

15.    The FBI conducted research relating to 211 East Ontario Street, Suite 1800, Chicago, Illinois, 60611, and found that this address was managed by the Chicago Business Center ("CBC"). On October 31, 2007, an Office Manager for CBC advised that CBC provides a "virtual office" service whereby CBC forwards mail and telephone calls received by CBC at its office on behalf of its clients, such as IPB. The Office Manager stated that CBC provided this "virtual office" service to IPB between approximately January 2006 and May 1, 2007.

16.    The Office Manager additionally advised that CBC leased a small

-5-

office space within Suite 1800 to IPB (the "IPB Office Space") beginning in approximately May 1, 2007, and that IPB was current on payments on its two-year lease, which was still active.

17.    According to the Office Manager, IPB hired Individual F through a Chicago-based temporary employment agency in approximately May 2007, and Individual F worked in the leased IPB office at CBC for about three to five months. Individual F took telephone calls, organized records, and responded to emails directed to IPB.  Individual F had not worked in the IPB Office Space in approximately 30 days.  Since that time, CBC has maintained the IPB Office Space as it was on the last day Individual F worked in the office.  The IPB Office Space contains IPB-related records and a computer that was used by Individual F while working for IPB.

18.    According to the Office Manager, an IPB representative who identified himself as Karl Randall completed the required documents with the U.S. Postal Service to allow CBC personnel to receive mail on behalf of IPB.  Randall instructed CBC to open IPB's mail and organize all checks and money orders from IPB investors for deposit to IPB's bank account at Wells Fargo Bank ("Wells Fargo"). CBC personnel took these payments, completed deposit slips and sent the items by Federal Express to Wells Fargo for deposit into IPB's bank account.  Since approximately January 1, 2007, CBC made copies of all checks, money orders and deposit slips prior to sending them to Wells Fargo.  CBC provided a copy of these items to Individual F, who filed them in the IPB Office Space.

-6-

19.    CBC recently learned information that led the company to believe IPB might have been conducting some type of fraudulent business. As a result, CBC stopped depositing payments received from IPB investors. For a brief period, CBC retained all packages and contents sent to IPB and CBC has those packages in its possession. CBC has since started to return all IPB packages to sender.

20.    The CBC Office Manager advised that, since Individual F's last day in the office, nobody from IPB has contacted CBC to inquire about the packages received at the address or the records and computer that remained in the office. Employees of CBC have tried to contact Randall but have been unable to reach him.

21.    Based on my training, experience, and participation in other investigations relating to wire fraud and other financial crimes, and based upon my consultation with other FBI Special Agents with extensive experience in these matters, I have learned that it is common for individuals committing such crimes to maintain books, records, receipts, notes, ledgers, financial statements, bills, and other documents relating to the commission of their crime, as well as the receipt, location, and disposition of the resulting proceeds. I also know that these records are frequently maintained by such individuals on computer hardware, software, and other computer-related data storage media.

22.    Based on my knowledge, training, experience, and consultation with FBI investigative personnel trained in the retrieval of evidence from computers, I know that in order to completely and accurately retrieve data maintained in computer-related media, to ensure accuracy and completeness of such data, and to

prevent the loss of the data either from accidental or programmed destruction, it is generally necessary that some computer equipment, peripherals, related instructions in the form of manuals and notes, as well as the software utilized to operate such equipment, be seized and subsequently processed by a qualified computer specialist in a laboratory setting. This is true because of the following:

a. The volume of evidence. Computer storage devices (such as hard disks, diskettes, tapes, laser disks, etc.) can store the equivalent of thousands of pages of information. Additionally, a user may seek to conceal criminal evidence by storing it in random order with deceptive file names. Searching authorities are required to examine all the stored data to determine which particular files are evidence or instrumentalities of criminal activity. This sorting process can take weeks or months, depending on the volume of data stored, and it would be impractical to attempt this kind of data analysis on-site.

b. Technical requirements. Analyzing computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even computer experts to specialize in some systems and applications. Thus it is difficult to know prior to the search which expert possesses sufficient specialized skill to best analyze the system and its data. No matter which system is used, however, data analysis protocols are exacting scientific procedures, designed to protect the integrity of the evidence and to recover even "hidden", erased, compressed, password-protected, or encrypted files. Since computer

-8-

evidence is extremely vulnerable to tampering or destruction (both from external

sources or from destructive code imbedded in the system as a "booby trap"), a

controlled environment is essential to its complete and accurate analysis.

     23.    Due to the potential volume of data and the technical requirements set

forth above, it will likely be necessary that the above referenced computer-related

equipment, software, data, and related instructions be seized for a limited period of

time and subsequently processed by a qualified computer specialist in a laboratory

setting.

     24.    With respect to the search of any computers or electronic storage

devices seized from the location identified in Attachment A hereto, the search

procedure of electronic data contained in any such computer may include the

following techniques (the following is a non-exclusive list, and the government may

use other procedures that, like those listed below, minimize the review of

information not within the list of items to be seized as set forth herein):

       a.    examination of all of the data contained in such computer
hardware, computer software, and/or memory storage devices to
determine whether that data falls within the items to be seized
as set forth herein;

       b.    searching for and attempting to recover any deleted, hidden, or
encrypted data to determine whether that data falls within the
list of items to be seized as set forth herein (any data that is
encrypted and unreadable will not be returned unless law
enforcement personnel have determined that the data is not (1)
an instrumentality of the offenses, (2) a fruit of the criminal
activity, (3) contraband, (4) otherwise unlawfully possessed, or
(5) evidence of the offenses specified above);

       c.    surveying various file directories and the individual files they

contain to determine whether they include data falling within
the list of items to be seized as set forth herein;

d.      opening or reading portions of files in order to determine
whether their contents fall within the items to be seized as set
forth herein;

e.      scanning storage areas to discover data falling within the list of
items to be seized as set forth herein, to possibly recover any
such recently deleted data, and to search for and recover
deliberately hidden files falling within the list of items to be
seized; and/or

f.      performing key word searches through all electronic storage
areas to determine whether occurrences of language contained
in such storage areas exist that are likely to appear in the
evidence described in Attachment B.

## INFORMATION CONCERNING THE LEASED IPB OFFICE SPACE

25.     The IPB Office Space consists of a small business office (approximately

100 square feet) located on the west-side of the 18th floor of 211 East Ontario

Street. The IPB Office Space has one entrance and windows facing west. The IPB

Office Space contains, among other items, a desk, office chair, telephone, desktop

computer, printer and open-shelving units.

26.    Based on the foregoing, there is probable cause to believe that the IPB

Office Space contain fruits, evidence, and instrumentalities of violations of Title 18,

United States Code, Section 1341 and 1343.


                                        _____
                                        **Mark Stakem, Special Agent**
                                        **Federal Bureau of Investigation**


**SUBSCRIBED AND SWORN TO BEFORE ME**
**this 2nd day of November, 2007.**

_____
**ARLANDER KEYS**
**U.S. MAGISTRATE JUDGE**

EXHIBIT   2 (TWO)

AUSA Brian Hayes (312) 353-4307

O AO 108  (Rev. 1203) Application for Seizure Warrant

# UNITED STATES DISTRICT COURT

_____NORTHERN_____ District of _____ILLINOIS, EASTERN DIVISION_____

In the Matter of the Search of
(Address or brief description of property or premises to be seized)

**UNDER SEAL**

ALL FUNDS CONTAINED IN WELLS FARGO BANK
ACCOUNT NO. 278-215-3403 HELD IN THE NAME OF
INDEPENDENT PARTNER BROKERAGE, INC.

## APPLICATION AND AFFIDAVIT
## FOR SEIZURE WARRANT

CASE NUMBER:

**07M411**

I, _____Jeremy Desor_____, being duly sworn depose and say:

I am a(n) __Speical Agent with the Federal Bureau of Investigation__ and have reason to believe
Official Title

that in the _____ District of _____Nevada_____
there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

ALL FUNDS CONTAINED IN WELLS FARGO BANK ACCOUNT NO. 278-215-3403 HELD IN THE NAME OF
INDEPENDENT PARTNER BROKERAGE, INC.

which is (state one or more bases for seizure under the United States Code)

property constituting and derived from proceeds traceable to violations of Title 18, United States Code, Section 1341 and 1343 (mail
fraud and wire fraud) and is subject to forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(c) and
982, and Title 28, United States Code, Section 2461(c).

concerning a violation of a Title ____18____ United States Code, Section(s) _1341 & 1343_
The facts to support a finding of probable cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT

**RECEIVED**

NOV 2 1 2007

MAGISTRATE JUDGE
GERALDINE SOAT BROWN
UNITED STATES DISTRICT COURT

Continued on the attached sheet and made a part hereof.    ☑ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence

11/21/2007                    at    CHICAGO, ILLINOIS
Date                                 City                          State

GERALDINE SOAT BROWN, U.S. MAGISTRATE JUDGE
Name of Judge            Title of Judge

_____
Signature of Judge

GOVERNMENT
EXHIBIT
2

# AFFIDAVIT

I, Jeremy Desor, first being duly sworn, state the following under oath:

## Introduction

1. I am an agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately 3 years. I am currently assigned to the Chicago Division of the FBI. As part of my assigned duties, I investigate violations of federal criminal law, including violations of Title 18, United States Code, Sections 1341, 1343, and 1344. Prior to working for the FBI, I was employed by Legg Mason Wood Walker and Moag and Company, LLC for four years as a Financial Analyst.

2. The following statements are based on my personal knowledge, conversations with other law enforcement officers and witnesses, as well as records obtained from various sources.

3. This affidavit is submitted for the limited purpose of establishing probable cause to seize funds located in a Wells Fargo bank account. As such, this affidavit does not contain all of the information that I have gathered during the investigation.

4. In summary, there is probabe cause to believe that funds maintained in a Wells Fargo bank account, no. 278-215-3403, in the name of "Independent Partner Brokerage, Inc." are the proceeds of violations of Title 18, United States Code, Section 1341 and 1343. Accordingly, these funds are subject to seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C). While seizure is presently requested for civil forfeiture purposes, the subject proceeds may potentially be forfeitable criminally pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

## Specific Facts

5.    On November 2, 2007, Magistrate Judge Arlander Keys granted the application of the FBI for a warrant to search business premises located at 211 East Ontario Street, 18th Floor, Chicago, Illinois, associated with a company identified on the internet as "Independent Partner Brokerage" (IPB).    The search warrant application and associated Affidavit, attached as *Exhibit 1*, are hereby incorporated by reference as if fully set forth herein.  In summary, the Affidavit set forth probable cause to believe that the individuals running IPB were operating a "Ponzi" scheme. The IPB Office Space searched by the FBI was leased to IPB by Chicago Business Center ("CBC"), a business which rents office space and provides call and mail forwarding services to clients such as IPB.

6.    As described in *Exhibit 1*, the IPB Website prominently featured a photograph of an older, white male identified as "Karl Randall," described on the IPB Website as the "President" of IPB.  Additionally, as also described in *Exhibit 1*, prior to execution of the search warrant an office manager at CBC advised the FBI that an individual who identified himself as "Karl Randall" completed documents on behalf of IPB that authorized CBC employees to forward checks and money orders received by IPB investors by FedEx for deposit into a Wells Fargo Bank bank account, no. 278-215-3403, in the name of "Independent Partner Brokerage."

7.    At the time that the FBI executed the search warrant at the IPB Office Space, a CBC employee provided the agents with a copy of a Maryland Driver's License for "Karl George Randall" bearing license number R-534-461-275-227, sent by Randall

- 2 -

from an email account to a former CBC employee.

8.    On or about November 13, 2007, the Baltimore Division of the FBI obtained records relating to Maryland driver's license number R-534-461-275-227 from the Maryland Motor Vehicle Administration's (MVA) Driver Licensing System. The official record obtained from MVA relating to license number R-534-461-275-227 indicates that this is a valid MVA driver's license number for an individual with the name "Karl George Randall" with a date of birth matching that on the Randall driver's license provided to CBC.  However, the photograph and address on the official record do not match the photograph and address on the copy provided by "Randall" to CBC.

9.    In addition, although the photographs on the official record relating to license number R-534-461-275-227 and the copy of the driver's license provided to CBC both depict white males, neither appears to be a photograph of the same older, white male depicted on the IPB Web Site.

10.    Randall provided CBC with a forwarding mailing address of 785-F Rockville Pike, Unit 509, Rockville, MD 20852.  This address was traced by the FBI to "1-Stop Pack-N-Ship" (1-Stop), a company that provides mailbox rental services. On November 13, 2007, I spoke to the manager of this facility who advised mailbox number 509 was rented by "Karl Randall."

11.    The 1-Stop manager described "Randall" as a black male and faxed me a copy of a Maryland driver's license presented by "Randall" when he first rented the box.  The copy of the driver's license presented by "Randall" to the 1-Stop manager depicted "Randall" as a black male.

- 3 -

12. The 1-Stop manager stated that "Randall" had not visited the 1-Stop facility in a long time but had asked to have two pieces of mail forwarded to a Post Office Box in Miami, Florida. Financial records obtained by the FBI from Wells Fargo for bank account number 278-215-3403 show many recent ATM withdrawals and debit card transactions were conducted in the state of Florida.

13. Financial records obtained from stored-value card provider TransCard and records obtained from Wells Fargo indicate several transfers from account 278-215-3403 to stored-value cards in amounts slightly less than $10,000 during the time period 10/13/06 through 11/10/06. The stored-value card transaction records show that money transferred to the cards was withdrawn in its entirety in cash on the same day as the transfers of cash from the Wells Fargo account, or the day after the transfer. All of the withdrawals were made at Florida-based ATMs. The cards were registered to Karl George Randall, 211 East Ontario Blvd., 18th Floor, Chicago, IL 60611; and Carmen Ionela Constantinescu, 785-F Rockville Pike, Rockville, MD 20852. The IPB Website includes a picture of "Carmen Constantin" with the job title of "Executive Manager, Banking Relations."

14. Financial records obtained by the FBI from Wells Fargo show that account number 278-215-3403 is held by "Independent Partner Brokerage, Inc., 101 Convention Center Drive, Suite 700, Las Vegas, Nevada 89109-2007." This address represents the office of "Nevada Corporate Headquarters, Inc.," the company retained by "Randall" to incorporate IPB and serve as IPB's registered agent.

15. The records obtained from Wells Fargo and CBC indicate all or most of the

money deposited into account number 278-215-3403 was proceeds from IPB investors. On November 20, 2007, Wells Fargo advised the FBI that according to their records, account number 278-215-3403 had an account balance of $1,073,882.35 as of November 19, 2007.

16.  On or about November 5, 2007, the Internet Crime Complaint Center (IC3) performed a database search for complaints relating to IPB.  This database search yielded 41 complaints from IPB investors claiming a total loss amount of approximately $818,729.18.

17.  Based on the above facts, there is probable cause to believe that illegal proceeds are contained in Wells Fargo bank account, no. 278-215-3403, and that these funds are subject to seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C) and 981(b).[1]  I therefore respectfully request that a seizure warrant be issued for the

---

[1]I have been advised that, pursuant to 18 USC 981(b)(3), and 28 U.S.C. 1355(b)(1), venue for seizure and forfeiture actions is proper in any district where any of the acts giving rise to forfeiture occurred.

contents of the Wells Fargo bank account, no. 278-215-3403, in Las Vegas, Nevada,

held in the name of "Independent Partner Brokerage, Inc."

_____
Jeremy Desor
Special Agent, FBI


SUBSCRIBED and SWORN TO before
me this 21st day of November 2007.

*Geraldine Soat Brown*
GERALDINE SOAT BROWN
United States Magistrate Judge

EXHIBIT   3 (THREE)

O AO 108  (Rev  12/03) Application for Seizure Warrant                                    AUSA  Brian Hayes (312) 353-4307

# UNITED STATES DISTRICT COURT

|  NORTHERN  | District of | ILLINOIS, EASTERN DIVISION |
|---|---|---|

In the Matter of the Search of
(Address or brief description of property or premises to be seized)

ALL FUNDS CONTAINED IN COMDATA CORP-
ORATION ACCOUNT NO. IP004 HELD IN THE NAME
OF INDEPENDENT PARTNER BROKERAGE, INC.

## APPLICATION AND AFFIDAVIT
## FOR SEIZURE WARRANT

CASE NUMBER **07M438 1**

I, Jeremy Desor _____, being duly sworn depose and say:

I am a(n) Speical Agent with the Federal Bureau of Investigation _____ and have reason to believe
Official Title

that in the _____ Middle _____ District of _____ Tennessee _____
there is now certain property which is subject to forfeiture to the United States, namely (describe the property to be seized)

ALL FUNDS CONTAINED IN COMDATA CORPORATION ACCOUNT NO. IP004 HELD IN THE NAME OF
INDEPENDENT PARTNER BROKERAGE, INC.

which is (state one or more bases for seizure under the United States Code)

property constituting and derived from proceeds traceable to violations of Title 18, United States Code, Section 1341 and 1343 (mail
fraud and wire fraud) and is subject to forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(c) and
982, and Title 28, United States Code, Section 2461(c).

concerning a violation of a Title _____ 18 _____ United States Code, Section(s) 1341 & 1343 _____.
The facts to support a finding of probable cause for issuance of a Seizure Warrant are as follows:

SEE ATTACHED AFFIDAVIT

# RECEIVED

### DEC 1 4 2007

**MAGISTRATE JUDGE SUSAN E. COX
UNITED STATES DISTRICT COURT**

Continued on the attached sheet and made a part hereof.    ☑ Yes    ☐ No

_____
Signature of Affiant

Sworn to before me, and subscribed in my presence
12/14/2007      10:13 AM      at    CHICAGO, ILLINOIS
Date                                              City                                State

SUSAN E. COX, U.S. MAGISTRATE JUDGE
Name of Judge          Title of Judge          Signature of Judge

GOVERNMENT
EXHIBIT
3

# A F F I D A V I T

I, Jeremy Desor, first being duly sworn, state the following under oath:

## Introduction

1.  I am an agent of the Federal Bureau of Investigation (FBI) and have been so employed for approximately 3 years.  I am currently assigned to the Chicago Division of the FBI.  As part of my assigned duties, I investigate violations of federal criminal law, including violations of Title 18, United States Code, Sections 1341, 1343, and 1344.  Prior to working for the FBI, I was employed by Legg Mason Wood Walker and Moag and Company, LLC for four years as a Financial Analyst.

2.  The following statements are based on my personal knowledge, conversations with other law enforcement officers and witnesses, as well as records obtained from various sources.

3.  This affidavit is submitted for the limited purpose of establishing probable cause to seize funds in a financial account managed by the Comdata Corporation, 5301 Maryland Way, Brentwood, Tennessee.  As such, this affidavit does not contain all of the information that I have gathered during the investigation.

4.  In summary, there is probabe cause to believe that funds in the possession of Comdata Corporation maintained in Comdata account no. IP004, in the name of "Independent Partner Brokerage, Inc.," are the proceeds of violations of Title 18, United States Code, Section 1341 and 1343.  Accordingly, these funds are subject to seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C).  While seizure is presently requested for civil forfeiture purposes, the subject proceeds may

potentially be forfeitable criminally pursuant to 18 U.S.C. § 981(a)(1)(C) and 28

U.S.C. § 2461(c).

### Specific Facts

5.      On November 2, 2007, Magistrate Judge Arlander Keys granted the

application of the FBI for a warrant to search business premises located at 211 East

Ontario Street, 18th Floor, Chicago, Illinois, associated with a company identified

on the internet as "Independent Partner Brokerage" (IPB).  The search warrant

application and associated Affidavit, attached as *Exhibit 1*, are hereby incorporated

by reference as if fully set forth herein.  In summary, the Affidavit set forth

probable cause to believe that the individuals running IPB were operating a "Ponzi"

scheme.  The IPB Office Space searched by the FBI was leased to IPB by Chicago

Business Center ("CBC"), a business which rents office space and provides call and

mail forwarding services to clients such as IPB.

6.      Additionally, on November 1, 2007, Magistrate Judge Geraldine Soat

Brown granted the application of the FBI for a warrant to seize funds totaling

approximately $1,080,000 maintained in a Wells Fargo bank account in the name of

Independent Partner Brokerage.  The seizure warrant application and associated

Affidavit, attached as *Exhibit 2*, are hereby incorporated by reference as if fully set

forth herein.  In summary, the Affidavit set forth probable cause to believe that the

funds maintained in the Wells Fargo bank account were the proceeds of violations

of Title 18, United States Code, Section 1341 and 1343, and therefore subject to

seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C).

7.  As described in *Exhibit 1*, the IPB Website prominently featured a photograph of an older, white male identified as "Karl Randall," described on the IPB Website as the "President" of IPB.  Additionally, as also described in *Exhibit 1*, prior to execution of the search warrant an office manager at CBC advised the FBI that an individual who identified himself as "Karl Randall" completed documents on behalf of IPB that authorized CBC employees to forward checks and money orders received by IPB investors by FedEx for deposit into a Wells Fargo Bank bank account, no. 278-215-3403, in the name of "Independent Partner Brokerage."

8.  A representative of Comdata has advised the FBI that on or about September 20, 2007, an individual referring to himself as "Karl G. Randall" signed a contract to open an account with Comdata.  Comdata provides "stored-value" or "e-cash" debit card accounts to businesses, typically for payroll purposes.  Comdata clients transfer money from bank accounts into their Comdata account.  From there, Comdata clients can "load" money from their Comdata account onto their registered Comdata debit cards.

9.  According to information and records that the FBI has received from Comdata, "Randall" opened the account for IPB, 211 East Ontario Street, 18th Floor, Chicago, Illinois.  "Randall" listed himself as the President of IPB.  "Randall" provided Comdata with a telephone number of 312-283-5330 and an email address of "karl-jen@netscape.com."  Comdata assigned the account number "IP004" to the IPB account.

10.  According to the Comdata employees, "Randall" wired money into the

- 3 -

IPB Comdata account on five occasions as follows: $900 on 09/18/2007; $52,210 on 10/10/2007; $52,180 on 10/17/2007; $52,180 on 10/24/2007; and $52,180 on 10/31/2007. According to the Comdata employees, all of these transfers were made from a Wells Fargo bank account. Records provided during this investigation by Wells Fargo for IPB account number 278-215-3403 showed $52,180 "WF Direct Pay-Payment" withdrawals on 10/09/2007, 10/16/2007, 10/23/2007, and 10/30/2007. Prior investigation showed all or most of the money deposited into Wells Fargo account 278-215-3403 was proceeds from IPB investors.

11. Comdata records show "Randall" registered 43 debit cards for the IPB Comdata account. None of the cards were registered to "Randall," but several were registered under the names of individuals who the investigation shows invested money with IPB.

12. "Randall" accessed his Comdata account and loaded money on to several of his registered cards on the dates of 10/10/2007, 10/11/2007, and 10/12/2007. The money loaded onto these cards was immediately withdrawn at various ATMs on the same day or day after the money was placed on the cards. All of the ATM withdrawals were conducted in Miami, Florida or the surrounding area. Many of the ATMs used were identical to ATMs used for withdrawals from Wells Fargo account 278-215-3403.

13. On or about 12/11/2007, Comdata's Investigative Services Department elected to freeze all of the money remaining in IPB account IP004, as well as all money remaining on the cards registered through this account. The account had a

- 4 -

balance of $156,585.07 and the cards had a total balance of $20,798.68. As a result, Comdata has frozen a total of approximately $177,383.75 from IPB's account and related debit cards. By following the flow of money from IPB investors, to Wells Fargo Bank, to Comdata, the Investigation to date demonstrates that the funds frozen by Comdata are funds obtained from victims of the IPB investment scheme. Comdata has advised the FBI that they will release this money to law enforcement if provided a seizure warrant for the funds.

14.   Based on the above facts, there is probable cause to believe that illegal proceeds are contained in IPB Comdata account, no. IP004, and that these funds are subject to seizure and forfeiture civilly pursuant to 18 U.S.C. § 981(a)(1)(C) and 981(b).[1]   I therefore respectfully request that a seizure warrant be issued for the contents of the IPB Comdata account, no. IP004, located in Brentwood, Tennessee.

Jeremy Desor
Special Agent, FBI


SUBSCRIBED and SWORN TO before
me this 14th day of December 2007.

SUSAN E. COX
United States Magistrate Judge

---

[1] I have been advised that, pursuant to 18 USC 981(b)(3), and 28 U.S.C. 1355(b)(1), venue for seizure and forfeiture actions is proper in any district where any of the acts giving rise to forfeiture occurred.

- 5 -